LAW OFFICES OF
**DONNA R. NEWMAN**
ATTORNEY AT LAW
20 VESEY STREET, SUITE 400
NEW YORK, NEW YORK 10007
TEL. 212-229-1516
FAX 212-676-7497
DONNANEWMANLAW@AOL.COM
MEMBER: N.Y. & N.J. BAR

July 7, 2022

Via email & ECF
Honorable Laura Taylor Swain
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: *United States v. John Edward Taylor*
    17cr01(LTS)-

Dear Judge Swain:

    John Taylor is scheduled to come before Your Honor on July 19th at noon for sentencing with respect to his admission to specifications 2,5, & 7 of the outstanding petition alleging Mr. Taylor violated the terms of his supervised release. We urge the Court to sentence Mr. Taylor to a term of time served with no supervision to follow. Under all the circumstances present here, the defense request is the most practical and reasonable options to ensure that Mr. Taylor is in a secure loving emotionally healthy environment and able to receive much needed mental health treatment. Our plan involves Mr. Taylor moving to Arizona to live with his cousin Ejuana Delahoussaye, a certified caregiver, who can enroll Mr. Taylor in health care, obtain a telephone for him, and enroll him in an out-patient/ in-patient mental health treatment at a facility near her home that we have contacted and that has agreed to take him as a patient. Further, another relative has advised she has employment secured for him in the area. When I spoke to Probation Officer Cooke today, he was unable to offer a plan for Mr. Taylor, and has been unwilling to entertain the plan Ms. Delahoussaye and I have devised. He is unwilling to discuss mental health treatment, although he received Dr. Goldsmith's updated psychological report.  Accordingly, we respectfully request that the Court impose the sentence sought by Mr. Taylor.

    1. BACKGROUND

        a. UNDERLYING CASE

    Pursuant to a plea agreement with the Government, Mr. Taylor on September 19, 2017, entered a plea of guilty to Counts One (Wire Fraud) and Four (Threatening Interstate

1

Communications  On January 4, 2018, Your Honor sentenced Mr. Taylor to a total term of 46 months to be followed by a term of five years supervised release.

    b. INCARCERATION WHILE DISRICT COURT WAS PENDING TRIAL AND AFTER SENTENCING

Mr. Taylor was not released on bond pending trial and spent his pretrial detention at the Metropolitan Detention Center ("MDC"). At the MDC he was raped and attacked. After sentencing. he was designated to USP Hazelton, a high security penitentiary.[1]  There he was molested and raped. See Exhibit A.  Prior to his release Mr. Taylor sought to transfer his supervision to Arizona but his counselor seemed not to have put through the paperwork(in fairness this was at the height of COVID).

    c. POST RELEASE SUPERVISION

Mr. Taylor supervision commenced on August 6, 2020-in the height of COVID. One day he was in prison and the next day he was in New York. One day he was in prison and the next day he was in New York. When released, despite knowing that Mr. Taylor lacked funds and a place to stay, he was released without funds, without an option of a half-way house or homeless shelter.

Fortunately, his family, despite their own limited financial resources, were able to pay for about a two month stay for Mr. Taylor at a Chelsea Pods, a hostel located at 370 8th Avenue in New York. After that he was on his own. To his credit, and in the midst of Covid, Mr. Taylor secured employment. At first with Boston Market in Bethpage and then he added to that an overnight position with Stop and Shop also located in Bethpage. Rather than congratulate Mr. Taylor with finding successful employment and without appreciating Mr. Taylor's need to work to survive, Probation Officer Courtney Cooke "admonished" Mr. Taylor for failing to inform him of the employment at Stop and Shop. See VOSR Petition at 2.

Mr. Taylor changed jobs several times that year and the next, always to obtain higher pay to  be self-sufficient and to have money to pay down his restitution obligation. Notably, Officer Cooke did not encourage Mr. Taylor nor recognize his efforts and achievements. Rather, he made every effort to continue to admonish Mr. Taylor whenever possible.

In March of 2021, Mr. Taylor secured employed at Dicks Sporting Good located in White Plains, New York and was able to make $50 monthly payments toward his restitution obligations. Mr. Taylor's success went unnoticed by Officer Cooke. By November 1, 2021 Mr. Taylor was hired by PGA Superstore in White Plains which included another salary increase. Of note, Mr. Taylor has an expertise in golf which has enabled him to obtain more lucrative employment. Based on his expertise, he was then hired as the assistant golf director at Golf Galaxy, a company acquired by Dick's Sporting Goods. Mr. Taylor advised Officer Cooke that he needed to travel to Atlanta, Georgia for training. However, Officer's Cooke's negative response promoted Mr. Taylor to travel without permission.

---

[1] It is puzzling that he was designated to USP Hazelton since he crime of conviction did not involve violence and his prior criminal history involved petty fraud.  See Amended PSR ¶'s 78, 79,80,81& 83.

The tension continued between Officer Cooke and Mr. Taylor who surmised that Mr. Cooke would deny all his requests, even those requests which involved new employment at higher salary, if it involved his residence outside the state. Mr. Taylor reported to his mental health counsel, Dr. Amin, his belief that his probation officer sought to punish him regardless of extenuating circumstances and was confident his officer would refuse any travel request based on his officer's comments to him.

Despite Mr. Taylor's fear of Mr. Cooke, he regularly reported to Probation as required. He also participated in the weekly mental health treatment program provided through probation. Probation did not require more extensive mental health treatment although a review of the PSR reveals Mr. Taylor's need for extensive treatment.

d.  VOSR PETITION

Mr. Taylor was arrested on February 15, 2022 in New Jersey on an arrest warrant issued from the Southern District of New York pursuant to a request from Officer Cooke in connection with a Petition alleging various violations of supervised release. He had been living there with his girlfriend and infant child.

He was denied bond and has been held without bond at the MDC since his arrest- a total of 6 months at this point.

Mr. Taylor recognizes this his fear of Officer Cooke is not an excuse for not obtaining permission to leave the jurisdiction or for changing his residence without notifying this officer. Accordingly, on June 6, 2022, before Your Honor, he admitted to violating the terms of his supervised release by moving to Highlands, New Jersey without permission from Probation (Specification # 2) and failing to notify his Probation Officer of his change of residence to Tarrytown, New York (Specification #7). For each of these Grade C violations, the United States Federal Sentencing Guidelines policy statement suggests a sentence of from 6-12 months. See U.S.S.G. § 7B1.4.  Probation Officer Cooke seeks a **sentence of 18 months** to be followed by another five-year term of supervised release. Officer Cooke has not provided an explanation as to why this Court should upwardly depart by six months from the top of the Guidelines sentence for these technical violations.

Mr. Taylor also admitted specification # 5. He admitted that on May 14, 2021 and thereafter he used a credit card given to him for his use by his then girlfriend but for purchases that were unauthorized. This is a Grade B violation with a Guidelines recommended term of from 12 to 18 months. Probation seeks a term of 18 months.

The statutory maximum term of imprisonment for both the Grade B and Grade C violations is 3 years.  Upon revocation of the five-year term of supervision imposed, a new term of supervision up to five years can be reimposed less any term of imprisonment the court now imposes. See 18 U.S.C. § 3583(h).

## 2. APPLICABLE LAW

Section 3553 provides the general framework for sentencing decision, including the imposition of supervised release. *United States v. Burden,* 860 F.3d 45, 56 (2d Cir. 2017). Section 3553(a) requires the district court, in impose a sentence, to consider, *inter alia,* "the need for the sentence imposed…to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). These factors go to the seriousness of the offense conduct. *United States v. Burden,* 860 F.3d 45, 56 (2d Cir. 2017). On the hand, §3583(c) which  governs the imposition sentences for a violation of supervised release, *specifically does not require the district court to consider the factors listed i*n *§3553(a)(2)(A). Id.* ((emphasis added).  The distinction between considerations in sentencing in sentencing for an offense and a violation of supervised release is explained by the fundamental difference between the two. "Supervised release is not, fundamentally, part of the punishment" *United States v. Aldeen,* 792 F.3d 247, 252 (2d Cir. 2015). Thus, the omission of the § 3553(a)(2)(A) factors accords with the purposed of supervised release, which is to "fulfill[ rehabilitative ends, distinct from those served by incarceration. *United States v Johnson,* 529 U.S. 53, 59 (2000).

In imposing a term of supervised release, the district court is required to consider, among other factors, "the nature and circumstances of the offense and the history and characteristics of the defendant.", 18 U.S.C. § 3553(a)(1); the need for the sentence imposed to "protect the public from further crimes of the defendant" and "provide the defendant with needed …training, medical case or other correctional treatment." 18 U.S.C. § 3553(a)(4)(B); and 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.," 18 U.S.C. § 3553(a)(6).

## 3. DISCUSSION

<u>TREATMENT NOT ADDITIONAL PUNITIVE INCARCERATION IS REQUIRED HERE TO FULFILL THE GOALS OF SUPERVISED RELEASE-REHABILITATION</u>
.
It is assumed the Court is familiar with Mr. Taylor's background as it was set forth in detail in his trial counsel's sentencing submissions to the Court and the initial Presentence Report as well as the Addendum to the Presentence Report. Accordingly, we will not repeat here Mr. Taylor's familial history which sadly involved extraordinary physical abuse, emotional abuse, sexual abuse, and  neglect, first at the hands of his heroin addicted parents and then by his Aunt who adopted him.  Attached hereto  as exhibit B  are letters from Shelia Taylor, Reginal Taylor and Ejuana Delhoussaye which provide a brief summary of that abuse he endured growing up and mental health treatment.

The Court also has been previously provided with the two psychiatric reports drafted by Eric Goldsmith, MD LLC in connection with his psychiatric examination of Mr. Taylor-the first dated November 29, 2017 submitted to the Court for consideration in its sentencing of Mr. Taylor and the report dated May 23, 2022, recently submitted to the Court. We ask the Court to consider both reports in determining the sentence it will impose for Mr. Taylor's violation of terms of his supervised release.

Of particular significance we direct the Court's attention to the below sections of Dr. Goldsmith's May 23rd report.



Report 5/23/2022 at 1.

Dr. Goldsmith explains further that Mr. Taylor 

Report 5/23/ 2022 at 4.

But it does not take an expert to understand how Mr. Taylor's background contributed to his offense conduct. His need for love and adoration to fill the void of his childhood is obvious. He creates an alternate reality to impress because his reality is just to devastating for him to bear.

Mr. Taylor is not beyond repair. Quite the contrary, he can be treated and rehabilitated with proper treatment. See Report 5/23/2022 at 8  Dr. Goldsmith recommends residential mental health placement in a facility that treats addictive behaviors. He recommends an approach which uses a 12-step model of treatment in conjunction with behavioral skills building and therapeutic interventions. Report 5/23/2022 at 8.

Accordingly, recovery for Mr. Taylor is mental health treatment. Essential, therefore, to the sentencing decision is, where and when Mr. Taylor will receive the treatment he needs and deserves.

Importantly, Mr. Taylor now has come to understand his  Report 5/23/2022 at 4. Mr. Taylor has expressed to counsel numerous times his remorse for his actions that have caused pain to the woman he genuinely cared about. It pains him that they did not recognize in the end that he cared about them. He does of course understand that his lying was hurtful, but he was at that point unable to control his need to lie. His purchase of merchandise at the golf country club, he will not excuse because it is inexcusable. He is truly sorry for his actions and for his regression to such

unacceptable behavior.[2] See Specification # 5 He has begged me from the very first meeting for comprehensive treatment plan. That has been his goal throughout these six months of incarceration.

Mr. Taylor's incarceration at the MDC over the last six months has been brutal. I need not explain to the Court the horrific conditions at the MDC. Just within the last 14 days, commissary at the MDC has ceased for several days, attorney visits were cancelled for two days, social visits cancelled at least seven of the 14-day period, and total lockdown for at least 4 days. That means no calls, no email communication, and no ability to leave the cell except for 30 minutes-sometimes every other day and sometimes every day. These harsh conditions are standard for MDC. I should add that toilets overflow on a regular basis, electricity is often intermittent. Rats and mice roam free and cold food is the norm. Nobody complains because nothing helps. Medical care? Almost non-existent. Thus, Mr. Taylor's six months of incarceration equate to at least 12 months or more. We ask the Court to take the conditions of his incarceration into its consideration in imposing its sentence for Mr. Taylor's violation of supervised release.

### 4 PROPOSED TREATMENT PLAN/MOVING TO ARIZONA

Mr. Taylor needs to be in a supportive environment. That is not existent in New York as he has neither friends nor family to lean on for emotionally or financially support.

His cousin Ejuanna Delahoussaye who resides alone in a two-bedroom home in Arizona has asked the Court to order the transfer of his supervision to Arizona[3]. See Exhibit B- Ms. Delahoussaye's letter to the Court. She will support Mr. Taylor until he is able to support himself. She is an article 9 certified Health Care worker[4] who specializes in caring for the mentally challenged individuals. She is more than suited to help Mr. Taylor. Her home does not have internet service and she does not intent to install the service. This will avoid Mr. Taylor from engaging in internet dating services. Ms. Delahoussaye as a result of her employment has access to state agencies and advised counsel when Mr. Taylor arrives at her home, the very next day she will take him to the appropriate agency to enroll him in health care, obtain food stamps for him, and will obtain for him a government issued phone (simple phone without internet ).

With the assistance of Ms. Delahoussaye and Mr. Taylor's sister-in-law Shelia Taylor, we have identified an in-patient/out-patient facility that will admit Mr. Taylor into their 90-day in-patient program. Attached as Exhibit C is a copy of the letter I received from Lateef Behavior. I have provided Probation with this information. Ms. Delahoussaye is willing to transport Mr. Taylor to this program. Shelia Taylor advised counsel that she has lined up

---

[2] Mr. Taylor did write a letter to the Court on Corrlinks. Counsel recalls downloading the letter but unfortunately it does not appear to be in the file. It is with deep apology to the Court and to Mr. Taylor. I am confident, if I can reach him, he will submit another letter, and he surely will speak at his sentencing.

[3] I have blocked her contact information because I am filing the letter with this submission via ECF. I have supplied all the contact information to Probation and will supply the Court with the information upon its request.
[4] See, Authority: A.R.S. §§ 36-132(A)(1), 36-136(G) Supp. 21-3-which licenses home health care providers and sets forth the requirements for certification.

employment for Mr. Taylor in Arizona. The family will provide for Mr. Taylor's transportation to Arizona.

In short, the main concern here is to provide Mr. Taylor with the needed mental health treatment. Once he is better, the remainder of the sentencing concerns, e.g., protect the public from further crimes of the defendant will be met. Without the proper treatment Mr. Taylor flounders. We add, treatment for him must include his family as they provide the love he so desperately needs.

I have tried to discuss a treatment plan with Probation Officer Cooke, but he refused to engage in what he characterized as a hypothetical. As I understand it, Probation concerns punishment and has no interest in discussing anything further about Mr. Taylor beyond the need for him to be punished by his incarceration for 18 months. Their goal is to punish Mr. Taylor into submission-just as his stepmother had tried to punish him into submission. This is plain cruel if not ill-informed.

Probation simply refuses to understand that Mr. Taylor is seriously ill and in many respects his addiction is comparable to an individual who is addicted to narcotics. Yet, if the underlying cause for Mr. Taylor's offending behavior was a drug addiction rather than mental illness. Probation would be eager for Mr. Taylor to enter into a residential substance abuse treatment program. But here, Probation has refused to investigate treatment facilities, has not contacted Ms. Delahoussaye or the treatment program I referred to them.

The Government is their latest email to me advised they will defer to Probation, although it is not clear to what aspect of Probation's position they are agreeing with.

In desperation because Officer Cooke refused to engage in discussion with me about the best way to resolve Mr. Taylor's violation,-i.e., in terms of the fastest way to provide Mr. Taylor with the needed treatment to ensure his rehabilitation, I contacted Supervising Probation Officer Kyle Crayton. He was kind enough to explain the "Catch 22" situation that Mr. Taylor is facing.

Arizona will not accept a supervisee transfer until it investigates the home environment and the person with whom Mr. Taylor will be living. This understandable. But Arizona will not begin this investigation until Mr. Taylor's violation is resolved. Thus, it is not until Mr. Taylor is sentenced that the paper-work for the transfer will be processed. Officer Cooke was non-committal as to whether he would complete the transfer request or even how long that will take. As I understand from Officer Crayton, Arizona Probation, once it receives the request to transfer from SDNY Probation, Arizona can take up to 30 days to investigate and decide whether it will accept or reject the transfer. In the meantime, Mr. Taylor must remain in New York-either in MDC or on the streets. Not a solution I believe is justified or particularly viable.

Officer Crayton suggested that if the Court is inclined to sentence Mr. Taylor to time served, it should also impose as a condition of the new term of supervised release a term of 30 days in a half-way house. While on the surface this does appear as a reasonable alternative to resolve the bureaucratic process, in reality is only puts off what has already been put off for six months-Mr. Taylor's treatment.

What Mr. Taylor needs is love, comfort, support, of his family and comprehensive mental health treatment. Sometimes when bureaucracy gets in the way of progress, there is a need to "think out of the box" to accomplish the goal at hand. Here the goal is rehabilitation.

In line with that reasoning, I ask the Court to sentence Mr. Taylor to time served without a term of supervision to follow. This frees him to go to Arizona immediately and obtain the treatment he needs there. Alternatively, I asked that Mr. Taylor be permitted upon his release to visit his cousin in Arizona and set in motion what needs to be done for his placement in the treatment facility near her home. Probation can supervise him from here as they did long distance supervision during Covid. The six months he been held at the MDC has not advanced the main concerns of supervision-rehabilitation. He has endured the brutal detention of MDC. He has certainly been punished and no additional punishment. Now it is time to change the course and center on his treatment.

### 5. CONCLUSION

For the reasons stated herein, we respectfully request the Court sentence Mr. Taylor to a term of time served with no supervision to follow.

Respectfully Submitted,
/s/
Donna R. Newman
Cc: AUSA Jonathan Rebold via email and ECF
   AUSA Andrew M. Thomas via email and ECF