

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 14, 2022

**BY ECF**

Hon. Laura Taylor Swain
Chief United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    *United States v. John Edward Taylor*,
             17 Cr. 001 (LTS)

Dear Judge Swain:

    The Government respectfully submits this letter in advance of the sentencing of defendant John Edward Taylor for certain violations of supervised release. For the second time in five years the Court is called upon to sentence Taylor for deceiving and defrauding his romantic partners. A sentence of one year's imprisonment, to be followed by a term of supervised release that includes mental health treatment, is the minimum possible sentence consistent with the Court's obligation to impose a just and fair sentence.

## Background

    This violation proceeding marks the latest in more than one dozen episodes of criminal misconduct by Taylor over the last three decades. These episodes range from retail fraud to check fraud to wire fraud. They have occurred in multiple states. They have kept occurring, even though Taylor has been repeatedly caught and repeatedly punished.

    Taylor's initial federal sentence arose out of an investigation by the FBI into reports that Taylor tricked and coerced women into personal or professional relationships, or both, in order to steal their identities and to obtain authorized and unauthorized access to their bank and credit accounts (the "Confidence Scam"). In investigating the Confidence Scam, the FBI identified and interviewed at least sixteen victims from whom the defendant, stole, or attempted to steal, money, credit, and personal information (the "Victims"). Taylor used the Victims' personal identifying information to purchase goods, transfer funds, and open new accounts. In certain circumstances, Taylor has opened accounts without the knowledge of the Victims. In other circumstances, Taylor has opened accounts with the Victims' knowledge, purportedly as business accounts, but secretly as personal accounts in the Victims' names, over which Taylor maintained exclusive control. (Presentence Investigation Report ("PSR") at ¶¶ 10-44).

On January 3, 2017, a grand jury sitting in this District returned indictment 17 Cr. 001 (LTS) (the "Indictment"), charging Taylor with wire fraud, in violation of Title 18, United States Code, Sections 1343 and 2; bank fraud, in violation of Title 18, United States Code, Sections 1344 and 2; aggravated identity theft, in violation of Title 18, United States Code, Sections 1028A and 2; and two counts of threatening interstate communications, in violation of Title 18, United States Code, Section 875(d). On September 19, 2017, Taylor pled guilty to Counts One and Four of the Indictment, charging him with wire fraud and threatening interstate communications. (PSR ¶ 8).

At his initial sentencing, Taylor's counsel emphasized Taylor's personal hardships and mental health challenges. (ECF Doc. 39 at 37 - 41). Taylor also addressed the Court himself and professed to have finally recognized the harmful consequences of his actions:

> Your Honor, I have changed. I am not the same person that was arrested in March 2016. The way I caused the victims of my crimes a lot of pain, whenever I am released I would do so being honest, keeping my word, being humble, working hard, and getting an education. I see now morals determine the rules you follow. I have new morals. I would like to end by saying I am sorry to those I have hurt and the bad memories I have left them with. (ECF Doc. 39 at 56).

After considering Taylor's statements, the arguments of counsel, and the views of Taylor's witnesses, the Court imposed a sentence of 46 months (in addition to the 14 months Taylor had served in state custody on related conduct). (ECF Doc. 39 at 65-66). The Court also imposed a five-year term of supervised release.

### *Conduct While on Supervised Release*

Taylor began his supervised release in August 2020. Within a year, Taylor had initiated a new cycle of disobedience and fraud. These issues came to the Government attention in 2021, when a private investigator contacted the U.S. Attorney's Office with concerns that Taylor had resumed the Confidence Scam. The FBI then alerted the Probation Office.

Witness interviews and records reveal that Taylor spent a significant portion of his supervised release engaging in manipulative conduct like that which led to the original sentence. For example:

- Taylor used online dating applications to meet women;

- Taylor lied about his background, wealth, and employment, including by claiming to have attended Harvard University and to work as a crisis manager for sports teams;

- Taylor used pretense and fabrication to gain access to the credit cards and charge accounts of his girlfriends, leading to thousands of dollars in unauthorized charges;

- Taylor cajoled, guilted, and lied to women to induce them to cover expenses and make purchases for Taylor's benefit; and

- Taylor solicited his dates and girlfriends for money for purported business ventures;

- Taylor concealed his criminal past and, at least to one woman, claimed to be on probation in New York due to an assault charge arising out of an incident where he had been defending another woman.

Throughout this period Taylor flouted the travel and residency conditions of supervised release. By October 2022, Taylor had effectively relocated to New Jersey from New York. In 2021 and 2022, Taylor repeatedly traveled to other states. Taylor did not seek permission to relocate or to travel, and, in late 2021 when Probation inquired about Taylor's living arrangements, Taylor claimed to be living in a rented room in New York even though a site visit made it obvious that he did not routinely reside there.

## Violation of Supervised Release Proceedings

On February 7, 2022, the United States Probation Office petitioned the Court for a warrant for Taylor's arrest on the basis of suspected violations of supervised release. On February 15, 2022, the U.S. Marshals Service arrested Taylor on that warrant.

On March 18, 2022, Probation amended its Violation Report to describe ten violations of supervised release: traveling to Atlanta, Georgia without permission (Specification 1); moving to Highlands, New Jersey without permission (Specification 2); failing to notify Probation about a change in address (Specification 3); traveling to Skillman, New Jersey without permission (Specification 4); making unauthorized purchases on a credit card (Specification 5); making new credit charges without the permission of the credit card holder (Specification 6); failing to notify Probation about a change in address (Specification 7); traveling to Boston Massachusetts in 2021 without permission (Specification 8); failing to notify Probation about a change in employment (Specification 9); and traveling to Boston, Massachusetts without permission in 2022 (Specification 10). *See* Amended Violation Report, dated March 18, 2022, at 3-8.

On June 3, 2022, Taylor appeared before the Court and admitted to specifications Two, Five, and Seven. (*See* ECF Minute Entry dated June 3, 2022).

The U.S. Sentencing Guidelines advise a sentence of 6 to 12 months' imprisonment for Specifications Two and Seven, as Grade C violations. The Guidelines advise a sentence of 12 to 18 months' imprisonment for Specification 5, as a Grade B violation. *See* U.S.S.G. 7B1.4.

Based on conversations with Probation Officer Courtney Cooke, the Government understands that Probation recommends that the Court impose a sentence of 18 months' imprisonment to be followed by 3 years of supervised release. Among other things, Probation is of the view that Taylor's actions reflect a failure to respect the Supervised Release process and the Court; a failure to learn from, or correct, his past behaviors; and a failure to make use of the rehabilitation resources available through the Probation Officer. Based on Taylor's continued fraudulent conduct, Probation believes that Taylor has largely been acting out of a desire for personal gain. Probation also recommends that any new term of supervised release include a computer and phone monitoring condition.

## Discussion

The Court should impose a sentence of one year's imprisonment to be followed by a new term of supervised release that includes mental health treatment. A custodial sentence of at least one year—which would fall within the Guidelines range—is necessary to protect the public from additional crimes by Taylor, to punish Taylor for his latest misconduct, and to promote respect for the law. *See* 18 U.S.C. § 3553(a).

Taylor's decades of deceitful conduct make plain that he is a recalcitrant fraudster. He has committed an array of crimes over many years, in many different places, and continues to commit more crimes even after being caught and punished. The Court's sentence is unlikely to alter Taylor's behavior in the years to come, so the Court should fashion a sentence, in part, to incapacitate him and thereby protect the public. A substantial custodial sentence would also be just punishment for Taylor's conduct, which, once again, centered on deceiving and defrauding women who placed their trust and financial accounts in Taylor's hands. And a substantial sentence is also warranted to remind Taylor and others that the Court expects those on supervised release to follow the law, to respect their probation officers, and to obey the conditions of supervised release.

Taylor argues for a sentence of time served and for relief from any further supervised release. (*See* Def. Mem. at 8). Such a sentence would be inadequate to achieve the purposes of sentencing. For one thing, Taylor's misconduct has been sufficiently egregious that a below-Guidelines sentence would be out-of-balance with its severity: within months of leaving prison for defrauding his romantic partners, Taylor resumed his scheme and quickly inflicted thousands of dollars in losses. For another, permitting Taylor to move to a new jurisdiction without any supervision at all—in essence, taking his word that he will get himself some help—all but ensures that he will have free rein to resume his pattern of deception without any oversight. Taylor did not have the change-of-heart he described to the Court during the initial sentencing in this matter, and he has done nothing to warrant the Court's trust going forward.

Of course, the Government agrees with the defense that mental health treatment is an important component of any plan to rehabilitate Taylor. To that end, the Government proposes that the Court include participation in mental health treatment as a condition of supervised release. Treatment should follow incarceration, however, and a fair sentence in this case would encompass both aspects. The Government defers to Probation as to what program or programs would be suitable for Taylor.

Finally, the Government acknowledges that Taylor quickly accepted responsibility for his latest misconduct by admitting to certain specifications, sparing the Government, Probation, the Court, and his victims the burden of a hearing. For that reason, the Government is not advocating for a sentence at the top of the Guidelines range.

## Conclusion

Taylor has once again defrauded those that are closest to him through a new cycle of fabrication and deceit. Taylor achieved his latest crimes only by disregarding the conditions of supervised release and by abandoning his earlier promise to the Court to change his ways. A significant custodial sentence of one year is warranted.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: _____
Jonathan Rebold/Andrew Thomas
Assistant United States Attorney
(212) 637-2512/-2106